IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MIKLOS PELLER <br> 25661 John Road <br> Olmsted Falls, Ohio 44138 <br><br> Plaintiff, <br><br> v. <br><br> THE METROHEALTH SYSTEM <br> 2500 MetroHealth Drive <br> Cleveland, Ohio 44109 <br><br> **Serve also:** <br> National General Management Corp. <br> c/o Corporation Service Company <br> 50 West Broad Street, Suite 1330 <br> Columbus, Ohio 43215 <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | CASE NO. <br><br> JUDGE: <br><br><br> **COMPLAINT FOR DAMAGES** <br> **AND REINSTATEMENT** <br><br> **JURY DEMAND ENDORSED** <br> **HEREIN** |

Plaintiff, Miklos Peller, by and through undersigned counsel, as his Complaint against the Defendants, states and avers the following:

### PARTIES AND VENUE

1. Peller is a resident of the city of Olmsted Falls, county of Cuyahoga, state of Ohio.

2. The MetroHealth System ("Metro") is a political subdivision that operated a business located at 2500 MetroHealth Drive, Cleveland, Ohio 44109.

3. Metro was at all times hereinafter mentioned an employer within the meaning of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*.

4. Metro was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.01 *et seq*.

**JURISDICTION & VENUE**

5. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Peller is alleging a Federal Law Claim under the FMLA.

6. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Peller's Ohio law claims because those claims derive from the same common core of operative facts and are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

7. All of the material events alleged in this Complaint occurred in Cuyahoga County.

8. Within two years of the conduct alleged below, Peller filed a Charge of Discrimination with the Ohio Civil Rights Commission ("OCRC"), against Defendant.

9. On or about September 14, 2023, the OCRC issued and mailed a Notice of Right to Sue letter to Peller regarding the Charge of Discrimination brought by Peller.

10. Peller received his Right to Sue letter from the OCRC in accordance with R.C. § 4112.052.

11. Peller has properly exhausted his administrative remedies pursuant to R.C. § 4112.051.

12. Peller has timely filed this Complaint within the relevant statute of limitations pursuant to R.C. § 4112.052.

13. Venue is proper pursuant to 28 U.S.C. § 1391, because it is the district court of the district, division, and county within which Defendants operated and where a substantial part of the events or omissions giving rise to the claim occurred.

**FACTS**

14. Peller is a former employee of Metro.

15. Peller began working for Metro on or around June 7, 2021.

16. Metro employed Peller as a Construction Management Specialist.

17. Peller suffers from neurocognitive weakness by hydrocephalus ("Cognitive Issues").

18. The Cognitive Issues present both physical and mental impairments.

19. Peller has a history of the Cognitive Issues.

20. Peller's Cognitive Issues substantially impair one or more of his major life activities, including, but not limited to, working and learning.

21. As a result of suffering from the Cognitive Issues, Peller is disabled.

22. Alternatively, Defendant perceived Peller to be disabled.

23. Despite any real or perceived disability, Peller was capable of performing his essential job duties with or without accommodation(s).

24. On or around December 16, 2022, Peller disclosed his disability to Defendant.

25. On or around January 12, 2023, Ana Bouchet accused Peller of fabricating his disability ("Disability Fabrication").

26. Bouchet was Peller's immediate supervisor.

27. During all material events asserted herein, Bouchet has and/or had authority to hire, fire, and/or discipline employees.

28. Bouchet did not participate in the decision to hire Peller.

29. The Disability Fabrication was discriminatory.

30. Peller reported the Disability Fabrication to the human resources department ("HR").

31. Upon information and belief, Defendant has a policy requiring investigations following receipt of a complaint of discrimination.

32. An investigation should include interviewing the complainant.

33. An investigation should include interviewing the subject of the complaint.

34. An investigation should include interviewing the subject of the reported incident.

35. An investigation should include interviewing witnesses to the reported incident.

36. An investigation should include getting a written statement from the complainant.

37. An investigation should include getting a written statement from the subject of the complaint.

38. An investigation should include getting a written statement from the subject of the reported incident.

39. In response to Peller's complaint of discrimination, HR did not interview Bouchet.

40. In response to Peller's complaint of discrimination, HR did not get a written statement from Peller.

41. In response to Peller's complaint of discrimination, HR did not get a written statement from Bouchet.

42. In response to Peller's complaint of discrimination, HR did not take corrective action against Bouchet.

43. HR ratified Bouchet's discriminatory conduct in failing to conduct an investigation into Peller's discrimination complaint.

44. HR ratified Bouchet's discriminatory conduct in failing to discipline Bouchet following Peller's discrimination complaint.

45. On or around January 24, 2023, Peller's physician provided certification documents related to his Cognitive Issues.

46. On or around January 25, 2023, Defendant placed Peller on leave until he had an exam performed by a neuropsychologist.

47. On or around March 13, 2023, Peller submitted a note from his physician ("Physician's Note").

48. The Physician's Note was a request for accommodations.

49. The Physician's Note was reasonable.

50. The Physician's Note would not have caused Defendant undue burden.

51. The Physician's Note stated that Peller needed up to 50% more time to learn new job duties, clear and concise instructions with opportunities for questions, occasional 5-minute breaks, and for instructions for his tasks to be both written and verbal.

52. Defendant is subject to the provisions fo the FMLA.

53. As of January 25, 2023, Peller qualified for protected leave under the FMLA.

54. As of January 25, 2023, Peller worked for Defendant for at least 12 months.

55. As of January 25, 2023, Peller had at least 1,250 hours of service for Defendant during the previous 12 months.

56. As of January 25, 2023, Peller was entitled to utilize FMLA leave for his Cognitive Issues.

57. On or around March 16, 2023, Peller was approved for intermittent FMLA leave relating back to the beginning of his leave on January 25, 2023.

58. Peller utilized FMLA leave while Defendant placed him on leave starting on January 25, 2023.

59. On or around March 17, 2023, Defendant terminated Peller's employment.

60. Defendant terminated Peller's employment because of his disability.

61. Alternatively, Defendant terminated Peller's employment because they perceived him to be disabled.

62. Defendant terminated Peller's employment because Bouchet believed that Peller's accommodations were too bu4rdensome for her.

63. Prior to terminating his employment, Defendant failed to engage in the interactive process to determine whether there were reasonable accommodations that could have been provided for Peller's disability.

5

64. In terminating Peller's employment, Defendant failed to provide Peller with reasonable accommodations for his disability.

65. Defendant terminated Peller's employment in retaliation for taking FMLA leave.

66. In terminating Peller's employment, Defendant interfered with Peller's rights under the FMLA.

## COUNT I: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

67. Peller restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

68. Pursuant to 29 U.S.C. § 2601 *et seq.*, covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

69. Defendant is subject to the provisions of the FMLA.

70. As of January 25, 2023, Peller qualified for protected leave under the FMLA.

71. As of January 25, 2023, Peller worked for Defendant for at least 12 months.

72. As of January 25, 2023, Peller had at least 1,250 hours of service for Metro during the previous 12 months.

73. As of January 25, 2023, Peller was entitled to utilize FMLA leave for his Cognitive Issues.

74. During his employment, Peller attempted to request FMLA leave by asking Defendant if he qualified to take FMLA leave.

75. Defendants unlawfully interfered with Peller's exercise of his rights under the FMLA in violation of Section 105 of the FMLA and section 825.220 of the FMLA regulations.

76. Defendant violated section 825.300(c)(1) of the FMLA and interfered with Peller's FMLA rights when Defendant did not honor Peller 's approved use of FMLA leave.

77. As a direct and proximate result of Defendant's conduct, Peller is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorneys' fees.

## COUNT II: RETALIATION IN VIOLATION OF THE FMLA

78. Peller restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

79. Metro is subject to the provisions of the FMLA.

80. As of January 25, 2023, Peller qualified for protected leave under the FMLA.

81. As of January 25, 2023, Peller worked for Metro for at least 12 months.

82. As of January 25, 2023, Peller had at least 1,250 hours of service for Metro during the previous 12 months.

83. As of January 25, 2023, Peller was entitled to utilize FMLA leave for his Cognitive Issues.

84. During his employment, Peller utilized FMLA leave.

85. After Peller utilized his qualified FMLA leave, Defendant retaliated against him.

86. Defendant retaliated against Peller by terminating his employment.

87. Defendant willfully retaliated against Peller in violation of U.S.C. § 2615(a).

88. As a direct and proximate result of Defendant's wrongful conduct, Peller is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorneys' fees.

## COUNT III: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

89. Peller restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

90. Peller suffers from the Cognitive Issues.

91. The Cognitive Issues present both physical and mental impairments.

92. Peller has a history of the Cognitive Issues.

93. Peller's Cognitive Issues substantially impair one or more of his major life activities, including, but not limited to, working and learning.

94. As a result of suffering from the Cognitive Issues, Peller is disabled.

95. Alternatively, Defendant perceived Peller to be disabled.

96. Despite any real or perceived disability, Peller was capable of performing his essential job duties with or without accommodation(s).

97. Peller disclosed his Cognitive Issues to Defendant.

98. Defendant treated Peller differently than other similarly-situated employees based on his disabling condition.

99. Alternatively, Defendant treated Peller differently than other similarly-situated employees based on his perceived disabling condition.

100. On or about March 17, 2023, Defendant terminated Peller's employment without just cause.

101. Defendant terminated Peller's employment based his disability.

102. Alternatively, Defendant terminated Peller's employment based his perceived disability.

103. Defendant violated R.C. § 4112.02 when it discharged Peller based on his disability.

104. Alternatively, Defendant violated R.C. § 4112.02 when it discharged Peller based on his perceived disability.

105. Defendant violated R.C. § 4112.02 by discriminating against Peller based on his disabling condition.

106. Alternatively, Defendant violated R.C. § 4112.02 by discriminating against Peller based on his perceived disabling condition.

107. Peller suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

108. As a direct and proximate result of Defendant's conduct, Peller suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT IV: FAILURE TO ACCOMODATE UNDER R.C. 4112.01 *et seq.***

109. Peller restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

110. Peller informed Defendant of his disabling condition.

111. Peller requested accommodations from Defendant when he provided the Physician's Note.

112. Peller's requested accommodations were reasonable.

113. There was an accommodation available that would have been effective and would have not posed an undue hardship to Defendant.

114. Defendant failed to engage in the interactive process of determining whether Peller needed an accommodation.

115. Defendant failed to provide an accommodation.

116. Defendant violated R.C. § 4112.02 by failing to provide Peller a reasonable accommodation.

117. Peller suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

118. As a direct and proximate result of Defendant's conduct, Peller suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT V: RETALIATION IN VIOLATION OF R.C. § 4112.01 *et seq.***

119. Peller restates each and every prior paragraph of this complaint, as if it were fully restated herein.

120. As a result of the conduct described above, Peller complained about the disability discrimination he was experiencing.

121. Subsequent to Peller reporting of discrimination to HR, Defendant terminated his employment.

122. Defendant's actions were retaliatory in nature based on Peller's opposition to the unlawful discriminatory conduct.

123. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

124. Peller suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

125. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Peller, he suffered and will continue to suffer damages, including economic and emotional distress damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Peller demands from Defendant the following:

(a) Issue an order requiring Defendant to restore Peller to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(b) An award against Defendant of compensatory and monetary damages to compensate Peller for lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of reasonable attorneys' fees and non-taxable costs for Peller's claims as allowable under law;

(d) An award of the taxable costs of this action; and

(e) An award of such other relief as this Court may deem necessary and proper.

>Respectfully submitted,
>
>*/s/ Taurean J. Shattuck*
>Taurean J. Shattuck (0097364)
>**SPITZ, THE EMPLOYEE'S LAW FIRM**
>25825 Science Park Drive, Suite 200
>Beachwood, OH 44122
>Phone: (216) 291-4744
>Fax:   (216) 291-5744
>Email:  Taurean.Shattuck@spitzlawfirm.com
>
>*Attorney For Plaintiff*

## **JURY DEMAND**

Plaintiff Miklos Peller demands a trial by jury by the maximum number of jurors permitted.

                                                  */s/ Taurean J. Shattuck*
                                                  Taurean J. Shattuck (0097364)
                                                  **SPITZ, THE EMPLOYEE'S LAW FIRM**